# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
No. 3:25-cv-00527

| | | |
|---|---|---|
| THELMA MACKINS, as the Administrator for the Estate of Jason B. Lipscomb | ) ) ) | |
| PLAINTIFF, | ) ) ) ) ) ) | **PLAINTIFF'S RESPONSE IN OPPOSITION TO THE MOTION FOR JUDGMENT ON PLEADINGS FILED BY DEFENDANTS SEPULVEDA, BEAVER, HAMORSKY, AND CITY OF GASTONIA** |
| v. | ) ) ) ) ) | |
| Officer JUAN PABLO SEPULVEDA CADAVID, Officer JASON LEE BEAVER, Officer HARRISON HAMORSKY, Officers JOHN and JANE DOE 1-2, and the CITY OF GASTONIA | ) ) ) ) ) | |
| DEFENDANT(s) | | |

NOW COMES Plaintiff Thelma Mackins, as the Administrator for the Estate of Jason B. Lipscomb, by and through the undersigned counsel, and respectfully submits the following Memorandum in Response to Defendants' Motion for Judgment on the Pleadings and requests this Court deny the same.

## STANDARD OF REVIEW

A Rule 12(c) motion is assessed under the same standard as Rule 12(b)(6): the complaint must plead a plausible claim, with all well-pleaded facts accepted as true and all reasonable inferences drawn in Plaintiff's favor. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Under Rule 12(c), video may be considered only if integral, authentic, and so

conclusive that it blatantly contradicts the complaint—utterly discrediting Plaintiff's version. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Doriety*, 109 F.4th at 679–80. None of those conditions is met here.

Under Rule 12(b)(6), and by implication also Rule 12(c), courts evaluate the sufficiency of a complaint, and it is not permitted at this stage to resolve any contests or disputes surrounding the facts or the merits of a claim. *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). Instead, the court generally must accept the facts as alleged as true and draw all reasonable inferences in favor of the plaintiff. *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); see also Fed. R. Civ. P. 12(b)(6). A plausible complaint contains facts that, as alleged, allow a court to draw the reasonable inference that the defendant is liable. *Ashcroft,* 556 U.S. at 678, 129 S.Ct. 1937.

When a court considers a video recording at the motion to dismiss stage it does so "when (1) the video is integral to the complaint and its authenticity is not challenged, but (2) only to the extent that the video clearly depicts a set of facts contrary to those alleged in the complaint, or blatantly contradicts the plaintiff's allegations, rendering the plaintiff's allegations implausible." *Doriety for Estate of Crenshaw v. Sletten*, 109 F.4th 670, 680-681 (4th Cir. 2024). The phrase "blatantly contradicts" implies, "[t]his standard 'is a very difficult one to satisfy' " and requires Plaintiff's version of events be "utterly discredited" by the video recording. *Lewis*, 98 F.4th at 529 (citation omitted); *see also Harris v. Pittman*, 927 F.3d 266, 275-76 (4th Cir. 2019). Only where a

plaintiff adopts the contents of an integral and authentic document or video will a court credit the document or video over conflicting allegations in the complaint. *Id.*, 679 (citing *Goines v. Valley Comm. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016). At this stage, judgment is improper where Defendants' BWC falls far below the high bar of blatantly contradicting Plaintiff's allegations, or where Plaintiff's allegations plausibly state a constitutional violation.

## FACTS AND PROCEDURAL HISTORY

Plaintiff filed suit on July 19, 2025, alleging that Defendants Sepulveda, Beaver, Hamorsky, and Doe violated the Fourth Amendment rights of the decedent, Jason Lipscomb, when they fired their service weapons, killing him, on July 20, 2022. Plaintiff sets forth detailed factual allegations against each individual concerning their personal involvement in the shooting, their relative positions and perspectives of Lipscomb at the time shots were fired, and alleges that the force used at the time shots were fired was unreasonable and excessive under the Fourth Amendment. Viewed in the light most favorable to Plaintiff, her Complaint sets forth factual allegations which support a reasonable inference that the Defendants were not faced with an imminent threat of harm at the various moments the shots were fired.

While set forth in much more detail in Plaintiff's Complaint, generally Plaintiff alleges as follows:

1. Mr. Lipscomb had one child with Trinity Adams. Trinity also had two bothers who attended the same daycare as her child. Complaint ¶¶ 36-37.

2. On July 20, 2022, Mr. Lipscomb picked up his child and Trinity Adams' brothers from daycare. The daycare was familiar with Mr. Lipscomb and he routinely picked up his child and Trinity's brothers together. Complaint ¶¶ 37-39.

3. On July 20, 2022, Trinity Adams reported to law enforcement that her two brothers were missing or potentially kidnapped from the daycare by Mr. Lipscomb. Complaint ¶¶ 36, 42.

4. Dispatch identified Mr. Lipscomb as a suspect in a domestic custody dispute The Defendants had no warrant for Mr. Lipscomb's arrest. There was no reliable allegation that Mr. Lipscomb had committed any violent crime or posed a threat to public safety. Complaint ¶¶ 42-45.

5. Defendants Sepulveda, Beaver, Hamorsky, and Doe(s), with Officer Ethan Brown, arrived at the residence of Mr. Lipscomb's mother looking for the children. When officers arrived to the residence, the children were back with their mother, Tina Adams. Complaint ¶¶ 42, 46, 51-52, 54. All children were secured prior to the use of deadly force. *Id.*¶ 54.

6. Defendants Sepulveda and Hamorsky saw the minor children unharmed and safe with their mother, Tina Adams. Complaint ¶¶ 50-51, 57-58.

7. As Defendants were speaking with individuals at the residence, Tina Adams alerted the officers to Mr. Lipscomb walking from the rear of the residence. Complaint ¶¶ 61-62. Tina Adams yelled, and Mr. Lipscomb ran. Complaint ¶¶ 58, 62.

8. Mr. Lipscomb did not brandish a weapon, make threats, or commit any act of violence as he ran. Complaint ¶ 67.

9. Knowing that the minor children were safe, Defendants chased Mr. Lipscomb as he ran to his car parked in clear view at the residence. Complaint ¶¶ 64-67.

10. Mr. Lipscomb got into his car, started it, and put it in reverse as Defendant Hamorsky reached the car and banged on the car window with his fist. Complaint ¶ 66.

11. Officer Ethan Brown ran to the driver's side door and attempted to get into the vehicle as it was moving. Complaint ¶¶ 70-73.

12. Officer Brown was knocked to the ground by the car door that he opened. Complaint ¶¶ 76, 80-81.

13. Each shooting officer stated that he assumed Officer Ethan Brown was somewhere beneath, or immediately in front of, the Hyundai but none of them could see Brown's exact location at the moment they opened fire. *Id.* at ¶ 84.

14. Detective Sepulveda admitted he was "*still not able to see the officer that was under the vehicle when he continued to engage.*" Officer Beaver likewise stated he "*could not see Brown*" once the car began to move, yet continued to discharge twenty-one rounds— including after changing magazines—into the driver's compartment. Officer Hamorsky confirmed that he only "*saw Brown on the ground … but could not tell how much under the car he was*" before firing three rounds from eight to fifteen yards away. Complaint ¶¶ 84-86.

15. Defendant Sepulveda fired two rounds at Mr. Lipscomb through the front windshield as the car was moving in reverse. Complaint ¶¶ 97, 109.

16. Mr. Lipscomb put the car into drive and proceeded away from all of the Defendants and no people were in the path of the car's forward trajectory. Complaint ¶¶ 82-83, 96.

17. Defendant Beaver drew his weapon and began firing as Defendant Sepulveda fired. Defendant Beaver continued firing without regard to the movement of Mr. Lipscomb's vehicle, reloaded his weapon, and continued to fire as he saw the taillights of Mr. Lipscomb's car. Complaint ¶¶ 121-124.

18. Defendant Sepulveda moved to the rear passenger side of the car and fired nine more rounds as the car drove away from him. Complaint ¶ 111.

19. Defendant Hamorsky fired three rounds into Mr. Lipscomb's car as it drove away from him. Complaint ¶¶ 126-127.

20. Mr. Lipscomb did not at any time attempt to harm the Defendants or anyone else on scene with his vehicle. Complaint, ¶¶ 67, 78, 92, 132, 143, 147.

21. At the time Defendants fired their weapons, the children were secure and there was no member of the public in immediate danger from Mr. Lipscomb or his moving vehicle. Complaint, ¶¶ 54, 67, 104, 132, 146, 187, 189.

22. To the extent the officers were in the trajectory of Mr. Lipscomb's vehicle, they placed themselves there. Complaint, ¶¶ 70, 83, 92, 160, 72-74, 78-81.

23. Mr. Lipscomb's vehicle was shot from the front while moving in reverse and from the side and rear while moving away from the Defendants. Complaint, ¶¶ 78, 83, 96, 146, 159, 227 ¶¶

24. No Defendant witnessed Mr. Lipscomb take deliberate action that posed an immediate threat to Officer Brown's life or safety. Complaint, ¶¶ 67, 143, 87-91.

25. Officer Brown created any danger to his safety by opening the driver's side door, standing inside the frame, and attempting to enter a vehicle while it was in reverse. Complaint, ¶¶ 70, 71, 81, 134, 140.

26. Defendants fired their weapons at Mr. Lipscomb's moving vehicle when it posed no danger to any officer or member of the public. Complaint, ¶¶ 96, 105, 127, 143, 146, 188, 189, 193, 230, 111-113, 122-124.

27. Detective Juan Sepulveda told the SBI that at no time when he fired 11 rounds did, he see Lipscomb injure another officer with the car, nor did he see an officer on the ground when he continued to engage Lipscomb. Complaint, ¶¶ 109, 113, 115, 118, 119, 213.

28. Plaintiff expressly alleges that "there is a lack of definitive visual confirmation from Defendant officers and their body cam footage regarding the impact or intent" (Compl. ¶168)

29. The Fourth Circuit has long drawn a bright line: once a moving car is past the officer-or never aimed at the officer at all-or the officer is no longer in the trajectory of the vehicle, the threat has ended, and the trigger must be stilled. *Waterman v. Batton* and *Williams v. Strickland* makes that rule unmistakable. Deadly force used after the danger has passed is not law enforcement; it is an execution. (Compl. ¶4).

Defendants filed their Answer on August 11, 2025, and on September 3, 2025 filed this Motion for Judgment on the Pleadings, incorporating Exhibits A and B which are identified as "video excerpts from the body-worn cameras worn by Officers Brown and Hamorsky." Plaintiff objects to these video excerpts as they have not been authenticated and are not integral to Plaintiff's Complaint. Plaintiff's Complaint makes reference to the existence of body cam footage, but it does not rely on any video in setting forth these allegations.

## ARGUMENT

### I. Plaintiff objects to any reliance on the BWC submitted by Defendants in support of the Motion for Judgment on the Pleadings.

Rule 12(c) requires the Court to accept Plaintiff's allegations as true and draw all inferences in Plaintiff's favor. The Fourth Circuit allows courts to review BWC footage at the

7

Rule 12(c) or Rule 12(b)(6) stage only where three demanding conditions are met: (1) the video is integral to the complaint; (2) its authenticity is undisputed; and (3) it blatantly contradicts the plaintiff's allegations or clearly depicts contrary facts, rendering those allegations implausible. *Doriety ex rel. Est. of Crenshaw v. Sletten*, 109 F.4th 670, 679–80 (4th Cir. 2024). As the phrase "blatantly contradicts" implies, "[t]his standard 'is a very difficult one to satisfy' " and requires that the plaintiff's version of events be "utterly discredited" by the video recording. *Lewis*, 98 F.4th at 529 (citation omitted); see also Harris v. Pittman, 927 F.3d 266, 275-76 (4th Cir. 2019). This is a high bar: the footage must "utterly discredit" the plaintiff's account. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Doriety*, 109 F.4th at 680. At most, Defendants' BWC raises fact disputes. Under the law of this Circuit, those disputes must be resolved in Plaintiff's favor at the pleadings stage—not by prematurely treating disputed video as dispositive evidence.

Courts consider a video at the pleadings stage only if it is "integral" to the complaint—that is, when the plaintiff's claims turn on or are based on the video itself. *Linlor v. Polson*, 263 F. Supp. 3d 613, 626 (E.D. Va. 2017). Courts in this Circuit have repeatedly distinguished between a document relied upon for the legal sufficiency of a claim and a document cited incidentally or for background. Only the former may be considered on a Rule 12(b)(6) or 12(c) motion. *Philips v. Pitt Cnty. Mem'l Hosp*., 572 F.3d 176, 180 (4th Cir. 2009). Mere references to BWC footage, or disputes over its interpretation, do not make it integral. Plaintiff's claims—Fourth Amendment excessive force, Equal Protection, and Monell liability—exist independently of the BWC.

Plaintiff's claims are grounded in officers' own admissions to the SBI, a forensic pathologist's autopsy regarding the cause of death, and municipal ratification of the shooting. Compl. ¶¶ 84–86, 113, 121, 126, 285–86; Doc. 1-1. Plaintiff's Complaint does not "turn on" the

footated; thus, the BWC is not integral. The Complaint references the word "BWC" only once, in Paragraph 58, to corroborate a discrete allegation: that the allegedly abducted children were already safe with their mother before officers used deadly force. Plaintiff alleged: "Defendant Hamorsky's body-worn camera ('BWC') footage from the date of the incident confirms this at timestamp 12:51:42." (Compl. ¶ 58). Defendants admit only that all children were secured prior to the use of deadly force. (Doc. 10 ¶ 18).

The Complaint expressly alleges that "there is a lack of definitive visual confirmation from Defendant officers and their body cam footage regarding the impact or intent" (Compl. ¶168). In other words, Plaintiff pleads that the video fails to resolve the critical issues in dispute. The Complaint therefore does not adopt or rely upon the contents of the BWC. The Complaint pleads that the children were safe, Brown alone placed himself in the car's path, no officer confirmed his position when they fired, Lipscomb was unarmed, and shots came from the side and rear after the vehicle had cleared the officers. Compl. ¶¶ 54, 58 (children secured before force used); ¶¶ 70–73, 81, 134, 140, 160 (Brown placed himself in trajectory of reversing car); ¶¶ 84–86 (no officer confirmed Brown's position when firing); ¶¶ 67, 132, 143, 147 (Lipscomb unarmed, made no threats); ¶¶ 82–83, 96–97, 111, 121–24, 126–27, 146, 159, 227 (shots fired from side and rear as vehicle moved away).

The Complaint's limited citation to a timestamp confirming that children were safe does not incorporate Defendants' own video "excerpts" wholesale. To the contrary, the Complaint affirmatively alleges that "[a]lthough the shooting officers would later assert the car struck a fellow officer, contemporaneous video and trajectory evidence refute an ongoing threat." (Compl. ¶ 2). Because the Complaint neither incorporates the BWC nor treats it as conclusive, it cannot be considered "integral" at this stage.

Authenticity is not limited to whether a video is genuine, but also whether its meaning is uncontested. Assuming arguendo, a BWC is integral; Plaintiff contends it is not, video may be considered only if its authenticity is undisputed. *Estate of Green v. City of Annapolis*, 696 F. Supp. 3d 130, 141–42 (D. Md. 2023). Plaintiff directly disputes Defendants' characterization of the BWC, alleging the footage actually supports Plaintiff's theory: shots were fired after the vehicle cleared the officers, when they could no longer see Officer Brown. Compl. ¶¶ 84–86, 90, 113, 121, 126. Video evidence must "blatantly contradict" Plaintiff's allegations to foreclose them at this stage. *Scott*, 550 U.S. at 380; *Doriety*, 109 F.4th at 679–80. In *Doriety*, the Fourth Circuit reversed dismissal because the BWC did not meet the "high bar" required to discredit the complaint. The same is true here. The footage does not indisputably show where Officer Brown was, when the threat ended, or whether continued firing was necessary. Reasonable jurors could view the video differently. That dispute is enough to make authenticity a live issue, precluding reliance on the footage at this stage.

Defendants point to the body-worn camera as if it resolves this case. But the Complaint pleads the officers' own words to the SBI—admissions that directly contradict Defendants' current spin on the video. Detective Sepulveda admitted he was "still not able to see the officer that was under the vehicle when he continued to engage." Compl. ¶ 84. Officer Beaver admitted he "could not see Brown" once the car began to move, yet fired twenty-one rounds—including after reloading. *Id.* ¶¶ 85, 121, 124–25. Officer Hamorsky admitted he only "saw Brown on the ground … but could not tell how much under the car he was" before firing three rounds. *Id.* ¶ 86. In other words, all three officers acknowledged that they assumed Brown was under the car but never visually confirmed it. Compl. ¶¶ 84–86, 90. Sepulveda went further, conceding he fired multiple rounds without knowing where Brown was until after the shooting had ended. *Id.* ¶ 113.

Officer Hamorsky stated to the SBI that from when he fired his first shot to the time, he fired his third shot, Lipscomb's car was fifteen yards away. *Id.*¶ 126.

These admissions matter. Defendants now argue the video "blatantly contradicts" the Complaint. But the officers themselves admitted they were firing blindly, based on speculation rather than a confirmed threat. That is the opposite of the kind of "utter discrediting" required under Scott v. Harris, 550 U.S. 372, 380 (2007), and Doriety ex rel. Est. of Crenshaw v. Sletten, 109 F.4th 670, 680 (4th Cir. 2024). Plaintiff has no means of verifying any supposed authenticity of the video excerpts and does not consent to their inclusion in the record. By the very nature of the BWC, neither Plaintiff nor the Court may assume completeness of the videos. *See Alexander* at 435-436. Plaintiff disputes that the BWC offered by Defendants provide a true and accurate representation of events and circumstances of the scene of Lipscomb's death. Because Plaintiff objects to the authenticity of the offered video excerpts, they must not be considered in evaluation of the sufficiency of the pleadings.

Even when integral and authentic, video evidence may be considered only if it "blatantly contradicts" the complaint. *Scott*, 550 U.S. at 380; *Doriety*, 109 F.4th at 679–80. In *Doriety*, the Fourth Circuit reversed dismissal because the BWC did not meet the "high bar" required to discredit the plaintiff's version. The same is true here.

The Complaint highlights Officer Brown's own reckless positioning. Rather than disengaging, Brown opened the driver's door and placed himself in the trajectory of a reversing vehicle. Compl. ¶¶ 72–73 (Brown placed himself in the trajectory of the reversing vehicle after the children were secured); ¶ 78 (Hamorsky placed himself in the trajectory of the vehicle moving in reverse); ¶ 79 (Sepulveda placed himself in the trajectory of the occupied vehicle).

Under controlling precedent, an officer cannot manufacture exigency by stepping into danger and then use deadly force on that basis. Defendants' Answer reinforces this point. Answer ¶ 30, Mackins v. Sepulveda, No. 3:25-cv-00527 (W.D.N.C. Aug. 11, 2025), ECF No. 10 (admitting "no officer saw Brown's actual position underneath the car as it moved in reverse and then forward"). These facts—drawn from the pleadings and Defendants' own concessions—describe officers escalating a contained encounter into a fatal shooting without legal justification. The BWC does not indisputably show Officer Brown's position under the car or whether a threat had ceased. Reasonable jurors could interpret it differently.

Defendants cannot use disputed video evidence to short-circuit those allegations at the Rule 12(c) stage, nor can Defendants sidestep discovery and jury review by asking the Court to weigh contested video evidence on a Rule 12(c) motion. In short, the BWC is not integral; its contents are neither adopted nor relied upon, and it does not blatantly contradict the Complaint.

**II.     Under *Waterman*, Defendants' Use Of Deadly Force Violated The Fourth Amendment Because Neither Defendants Nor Officer Brown Were In The Trajectory Of Mr. Lipscomb's Car When Defendants Shot Mr. Lipscomb.**

The Fourth Circuit has long made clear that "officers violate the Fourth Amendment if they employ deadly force against the driver" of a car while the officers are not "in the car's trajectory." *Williams v. Strickland*, 917 F.3d 763, 770 (4th Cir. 2019). Defendants violated precisely that rule because no officer was in the path of Mr. Lipscomb's vehicle. Because deadly force is extraordinarily intrusive, it takes a lot for it to be reasonable." Williams, 917 F.3d at 769; see *Waterman*, 393 F.3d at 477 ("[T]he intrusiveness of a seizure by means of deadly force is unmatched."). In particular, "[t]he Constitution tolerates the use of deadly force by police officers only when necessary to thwart an imminent threat to life." Franklin v. City of Charlotte,

64 F.4th 519, 525 (4th Cir. 2023). That imminent threat must exist, moreover, "at the moment that force is employed." *Waterman*, 393 F.3d at 481. Applying these well-established principles, the Fourth has repeatedly held that officers cannot shoot the driver of a car if the officers are not "in the car's trajectory." *Williams*, 917 F.3d at 770; *see Waterman*, 393 F.3d at 482. If the officers are not in the car's trajectory, there is no imminent "threat to their safety" that could justify deadly force. *Waterman*, 393 F.3d at 482.

In 2005, the Fourth Circuit made clear in *Waterman* that officers cannot use deadly force against the driver of a car as soon as the officers are out of the car's trajectory. There, several officers began firing at a car when it accelerated towards them. Seconds later, the officers fired a second volley of shots after the car had driven past them. The Court held that the officers violated the Fourth Amendment when they fired the second volley of shots because, at that moment, the vehicle had "passed their position and they were out of danger." *Waterman*, 393 F.3d at 482. Because Defendants were no longer in the path of the vehicle, deadly force was unjustified because "the threat to their safety was eliminated and thus could not justify the subsequent shots." Id.

*Waterman* resolves this motion for judgment on pleadings because, just like the officers there, Defendants Sepulveda, Beaver, and Hamorsky shot Mr. Lipscomb when he posed no threat to any officer at the time shots were fired. Plaintiff alleges that none of the officers were in the trajectory of the vehicle when they fired. Plaintiff alleges that the gunshots to the front of the vehicle occurred when the vehicle was moving in reverse and that the shots to the side and rear of the vehicle came as Mr. Lipscomb drove away from officers. *Waterman* and its progeny make clear that Defendants' use of deadly force was unreasonable. In a series of cases, the Fourth Circuit has repeatedly held that officers violated the Fourth Amendment because they shot

someone even though they were not "in the trajectory" of the person's vehicle. Williams, 917 F.3d at 769. Defendants violated this clearly established law because, as the district court expressly determined, he was "out of the car's trajectory when he fired."

### a. Defendants cannot show that their use of force was justified as a matter of law to prevent a suspect's escape.

Defendants assert that their use of force is justified to prevent escape of Mr. Lipscomb because Mr. Lipscomb has inflicted or threatened to inflict serious physical harm and never abandoned an attempt to flee. Underlying this argument is the Defendants' conclusion that Mr. Lipscomb posed an imminent risk of serious bodily harm to the Defendants. Plaintiff's allegations do not support this conclusion. Plaintiff alleges that the Defendants had knowledge that the children subject to the original call to law enforcement were safe. Mr. Lipscomb attempted to flee, but it was the Defendants who put themselves at risk by placing themselves in the trajectory of his vehicle.

Defendants again seek to use the offered video footage to support an argument that Mr. Lipscomb posed a continuing threat to officers. Subject to Plaintiff's objection to the consideration of this material and without waiving the same, the footage offers limited perspectives. Defendants argue that the footage must be interpreted to show Mr. Lipscomb running over an officer despite this not being shown. It is this disputed conclusion that forms the foundation for Defendants' argument that Mr. Lipscomb posed a sufficient risk that justified the use of deadly force to prevent escape.

It has long been the law in the Fourth Circuit (and many others) that "force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated." *Waterman v. Batton*, 393 F.3d 471, 481-82 (4th Cir. 2005); *Alicea v.*

*Thomas*, 815 F.3d 283, 288 (7th Cir. 2016) (stating that use of force "is only reasonable when it is proportional to the threat posed. If an officer's threat perception changes, so too should her force calculus."); *Lamont v. New Jersey*, 637 F.3d 177, 184 (3d Cir. 2011) ("Even where an officer is initially justified in using force, he may not continue to use such force after it has become evident that the threat justifying the force has vanished."); *Dickerson v. McClellan*, 101 F.3d 1151, 1162 n.9 (6th Cir. 1996) (recognizing the analysis changes where "the officers' initial decision to shoot was reasonable under the circumstances but there was no need to continue shooting").

Since *Waterman*, this Court has repeatedly held that officers violated clearly established law by firing at a car "after they were no longer in the trajectory of [the] car." Id. at 769. For example, in Krein v. Price, 596 F. App'x 184 (4th Cir. 2014), this Court denied qualified immunity to officers who shot the driver of a car "through the passenger side window," because the fact that the officers were off to the side of the car meant that they "were not in danger" of being hit. Id. at 188. Similarly, in *Williams*, this Court denied qualified immunity to officers who fired at a moving car, even though the closest officer "was alongside the car and out of the car's trajectory." *Williams*, 917 F.3d at 766. "Following *Waterman*," this Court had "no difficulty" concluding that the officers violated the Fourth Amendment. Id. at 769.

Plaintiff has made sufficient factual allegations to support a finding that the Defendants' use of deadly force was unreasonable and the offered video excerpts cannot establish as a matter of law that Mr. Lipscomb posed an ongoing risk of imminent harm.

> **b. Defendants cannot show that their actions were reasonable as a matter of law because Mr. Lipscomb was attempting to flee.**

Entwined within their argument that Defendants were justified in using deadly force to prevent Mr. Lipscomb's escape is the assertion that their actions were justified because Mr.

Lipscomb did not abandon his attempt to flee. Defendants contend that they had the authority to continue shooting at Mr. Lipscomb until his vehicle stopped.

Defendants cite to *Plumhoff v. Rikard*, 572 U.S. 765, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014) for the proposition that use of deadly force is justified until a suspect abandons his attempt to flee. *Id.* at 777. In *Plumhoff* the suspect was engaged in a dangerous vehicle pursuit and posed a severe threat to public safety. *Id.* Mr. Lipscomb was backing out of a parking space. These are not analogous situations.

Whatever threat to officers the original movement of Plaintiff's vehicle posed, any such threat was over once the vehicle was moving forward. Force justified at the beginning of an encounter is not justified once the immediate threat ends. *Waterman*, 393 F.3d at 481. "A passing risk to a police officer is not an ongoing license to kill an otherwise unthreatening suspect." *Id.* (quoting *Abraham v. Raso*, 183 F.3d 279, 294 (3d Cir. 1999)). The Fourth Circuit has expressly addressed the ongoing threat analysis in situations involving vehicles. Once a car has driven past an officer, it is no longer reasonable for that officer to believe that the care was an imminent threat to their safety. *Williams v. Strickland*, 917 F.3d 763, 769 (4th Cir. 2019). An officer who starts ***or continues to fire*** on a suspect's vehicle when the officer is no longer in the trajectory of it violates the Fourth Amendment rights of the suspect. *Id.* (emphasis added).

Plaintiff has set forth allegations that the Defendants' decisions to fire on Mr. Lipscomb were unreasonable both when the vehicle was moving in reverse and moving forward. The offered video excerpts do not blatantly contradict Plaintiff's allegations.

> **c. Defendant cannot show that their actions were reasonable as a matter of law where the determination depends on the reasonableness of the individual officer based on the circumstances known to them at the moment shots are fired.**

Determining whether each Defendant's use of deadly force was reasonable requires analysis of the totality of the circumstances based on the information available to each individual Defendant immediately prior to and at the very moment he fired the shots. *Knibbs v. Momphard*, 30 F.4th 200, 214 (4th Cir. 2022). The actions of each Defendant must be analyzed based on their individual position and observations at the moment that they decided to fire. Firing a shot while the car was moving in one direction may be justified, but the decision to continue firing when the care changed directions may not be.

Since 2005, this Court has applied *Waterman* repeatedly to hold that officers violate the Fourth Amendment when they shoot into the side of passing cars. See, e.g., Gallmon, 801 F. App'x at 115 (applying *Waterman* to conclude that a reasonable jury could find that "the danger had passed when Cooper fired at the Honda's side door and window"); Doriety, 109 F.4th at 680-81 (holding deadly force was not justified when officers shot "through the car's passenger window" while the car was "moving away from the officer"). For example, in Krein, officers shot the driver of a truck as he tried to escape from a gas station. See 596 F. App'x at 186. Prior to the fatal shot, the driver "accelerated" his truck towards the officers. Id. at 185. The officers moved "to get out of [the driver's] way," including an officer named Price who "stepped off to the side." Id. But even though "Price got out of harm's way when he stepped to the side," he fired "through the truck's passenger-side window," hitting the driver. Id. at 186.

Plaintiff has sufficiently alleged facts to show that Defendants Sepulveda, Beaver, and Hamorsky each violated Mr. Lipscomb's Fourth Amendment rights. Any finding that the Defendants acted reasonably as a matter of law would require the court to "resolve contests surround the facts or the merits of a claim," determinations that are improper at this stage. *Doriety*, 109 F.4th at 679. Even if the Court were to consider the offered video excerpts, this

footage does not establish the position or perception of each Defendant or the timing of the shots in relation to the vehicle's trajectory. Defendants' Motion for Judgment on the Pleadings must be denied.

### III. The Defendants are not entitled to qualified immunity where Plaintiff has alleged that each Defendant violated Mr. Lipscomb's constitutional rights as identified under clearly established law.

Qualified immunity is granted to law enforcement officers in circumstances where an officer could reasonably believe that his actions were lawful. *Knibbs*, 30 F.4th at 214. When the allegations set forth against them (1) substantiate a violation of a constitutional right and (2) that right was clearly established such that a reasonable officer would have understood that the alleged conduct would violate the law. *Id.* Officers are not permitted to gain an advantage through sloppy study of the laws that they are bound to enforce. *Heien v. North Carolina*, 574 U.S. 54, 135 S.Ct. 520, 539-40, 190 L.Ed.2d 475 (2014). Where the caselaw is clear, qualified immunity should be denied because a reasonably competent public official should know the law governing his conduct. *David v. Mosley*, 915 F.Supp. 776 (E.D.Va. 1996).

Since *Waterman*, this Court has repeatedly held that officers violated clearly established law when they fired at a car despite being out of the car's trajectory. For example, in 2009, officers violated *Waterman* by shooting "through the passenger side window" of a truck as it passed by. Krein, 596 F. App'x at 185. In 2012, officers violated *Waterman* by shooting the driver of a car, even though the closest officer "was alongside the car and out of the car's trajectory." Williams, 917 F.3d at 766. And in 2016, an officer violated *Waterman* by shooting "into the driver's side door and window" of a car as it "passed" the officer. Gallmon v. Cooper, 801 F. App'x 112, 114 (4th Cir. 2012). The list goes on. See Doriety for Estate of Crenshaw v.

Sletten, 109 F.4th 670, 680-81 (4th Cir. 2024) (determining deadly force was not justified when officers shot "through the car's passenger window").

Defendants argue that because Plaintiff cannot point to any established case law prohibiting the use of deadly force to protect an officer being dragged underneath a fleeing suspect's vehicle and prevent the suspect's further escape, Defendants Sepulveda, Beaver, and Hamorsky should be granted qualified immunity. Defendants seek to use a logical fallacy to undermine Plaintiff's claims. Defendants have outrageously misstated the allegations and ignored the requirement that their motion requires all facts be viewed in the light most favorable to Plaintiff. There are no allegations from Plaintiff that Mr. Lipscomb dragged an officer under his vehicle. Defendants can make this argument to a jury, but it is wholly improper at this stage. The unlawfulness of Defendants' conduct was apparent even setting aside *Waterman* and its progeny. See Hope v. Pelzer, 536 U.S. 730, 741 (2002) (recognizing that rights can be clearly established even without cases like *Waterman* that involve "fundamentally similar" fact patterns). Indeed, the Fourth Circuit – applying North Carolina tort law –reversed summary judgment for an officer who fired shots into a moving vehicle under similar circumstances. Lee v. Town of Seaboard, 863 F.3d 323, 328 (4th Cir. 2017).

Defendants received fair warning because at least seven Circuits had held "that an officer lacks an objectively reasonable basis for believing that his own safety is at risk when firing into the side or rear of a vehicle moving away from him." Orn v. City of Tacoma, 949 F.3d 1167, 1178 (9th Cir. 2020). No reasonable officer would believe that it was reasonable to shoot Mr. Lipscomb after Defendants no longer in the path of Mr. Lipscomb's vehicle. By the time of the shooting, "at least seven circuits had held that an officer lacks an objectively reasonable basis for believing that his own safety is at risk when firing into the side or rear of a vehicle moving away

from him." Orn, 949 F.3d at 1178; see, e.g., Cowan, 352 F.3d at 763 (holding deadly force was not justified because the vehicle was "traveling slowly" and the officer was "not in front of the vehicle but substantially off to the side when he fired the second, fatal shot"); Kirby v. Duva, 530 F.3d 475, 482 (6th Cir. 2008) (finding no imminent threat to the officer because he "was still two feet to the Ranger's side, and thus not in its path"). This "robust consensus of persuasive authority" also clearly established that Defendants' conduct was unlawful. Booker, 855 F.3d at 544.

In the analysis herein, Plaintiff has set forth ample authority that an officer may not use deadly force against a suspect where that suspect poses no threat of imminent harm to officers or public safety; that an officer shooting into the side or rear of a suspect's moving vehicle violates the Fourth Amendment unless the officer or another person are in the vehicle's trajectory; and that an officer's use of force must be examined based on the particular perceptions of the officer and the evolving threat posed by a suspect.

.

## IV. The statute of limitations does not bar Plaintiff's assault and battery claim under North Carolina law.

Plaintiff asserts claims of assault and battery against Defendant Beaver in his individual and official capacity. Complaint ¶¶ 358-370. Plaintiff alleges that Defendant Beaver pointed his weapon and fired at Mr. Lipscomb, putting him in actual and subjective apprehension of immediate harmful or offensive contact. Complaint ¶ 360. Because of Defendant Beaver's actions, Mr. Lipscomb suffered loss of his liberty and freedom, bodily injury resulting in pain and suffering, and mental anguish. Complaint ¶ 363. Plaintiff does not allege that Defendant Beaver's actions caused Mr. Lipscomb's death.

North Carolina has a three-year statute of limitations for all personal injury claims unless otherwise provided by statute. N.C.G.S. § 1-52(16). In a wrongful death claim, that time period is set at two-years under N.C.G.S. § 1-53(4). Plaintiff alleges that the multitude of shots fired by Defendant Beaver caused damage separate and apart from Mr. Lipscomb's death. Plaintiff alleges that Defendant Beaver fired 21 shots into the rear of Mr. Lipscomb's vehicle as it was driving away from officers. (224). The fear of imminent harm from the barrage of gunshots represents damages separate and apart from Mr. Lipscomb's death. As such, the three year statute of limitations should apply.

### a. Defendant Beaver is not entitled to public official immunity.

Defendants assert that Defendant Beaver is entitled to public official immunity under North Carolina law. Plaintiff's state-law tort claim turns on whether Defendant Beaver's use of force was reasonably necessary to defend himself or a third party from what he reasonably believes to be the use or imminent use of deadly physical force. N.C.G.S. § 15A-401(d)(2)(a); see also *Lee v. Town of Seaboard*, 863 F.3d 323, 328 (4th Cir. 2017). When an officer acts with recklessness or heedless indifference to the safety and rights of others, public official immunity does not provide a shield to liability. *Id.*(citing *Hart v. Brienza*, 784 S.E.2d 211, 216 (N.C.App. 2016).

Defendants cannot resort to public official immunity where their acts amounted to malice. Or, put another way, where his actions were "so reckless or so manifestly indifferent to the consequences [] as to justify a finding of willfulness and wantonness equivalent in spirit to an actual intent." *Wilcox v. City of Asheville*, 730 S.E.2d 226, 232 (NC App. Ct. 2012) (upholding trial court's denial of public official immunity for three officers who collectively fired 27 bullets into a fleeing vehicle). Indeed, Plaintiff pled in her Complaint that Officer Beaver acted with

malice when he opened fire on Plaintiff's vehicle with 21 rounds of his service weapon. Compl. at ¶ 123. Plaintiff did not merely make a bare assertion of malice. He alleged plausible facts going to this issue, sufficient to preclude a motion to dismiss on these grounds. Furthermore, Defendants have purchased liability insurance waiving governmental and public official immunity to extent of coverage. Compl. ¶ 28.

Under North Carolina law, use of force is not considered necessary under N.C.G.S. §15A-401(d)(2) "when an officer has a reasonable opportunity to avoid the danger or threat allegedly supporting the decision to use deadly force." *Id.* at 329. In *Lee*, the Court found questions of fact as to whether an officer could have avoided a threat posed by a suspect's vehicle by taking cover behind another vehicle parked in the area. *Id.* at 330. This question of fact precluded the application of public official immunity.

Defendant Beaver's perception of a threat and any potential to avoid the threat is not settled at this stage of litigation. Plaintiff has alleged that Defendant Beaver used unnecessary force and that Plaintiff posed no imminent threat. The pleadings cannot resolve the factual question of necessity. Likewise, even if the Court were to consider the video excerpts over Plaintiff's objections, the footage on its own does not blatantly contradict Plaintiff's allegations and cannot form a basis for judgment on the pleadings.

**V.  Plaintiff has set forth allegations sufficient to state a Monell claim.**

Defendants assert they are entitled to judgment on the pleadings as to Plaintiff's Monell claims because Plaintiff has not established an underlying constitutional violation. Defendants do not challenge any other aspect of the Monell claim, thereby accepting its sufficiency in all other aspects.

As argued above, Plaintiff has set forth sufficient allegations to state a violation of Mr. Lipscomb's Fourth Amendment rights and survive Defendants' Motion for Judgment on the Pleadings. Plaintiff's Monell claim must also move forward.

Plaintiff sets forth allegations of the City of Gastonia's policing culture where complaints of excessive force against Black citizens are minimized and ignored. Plaintiff identifies policy of the City of Gastonia which reflects a de facto practice of ratifying unconstitutional force against Black citizens while the same sorts of complaints by white citizens as well as lesser conduct like rudeness and code violations are found to be excessive. Plaintiff's allegations are sufficient to state a Monell claim, and this claim should be allowed to proceed.

**VI.**     **Plaintiff has set forth allegations sufficient to state an Equal Protection claim.**

Defendants assert that Plaintiff's equal protection claim must fail because the Complaint lacks reference to comparator circumstances. Defendants acknowledge the statistical disparities in the race of those who filed use of force complaints against the City of Gastonia but ignores the specific internal affairs case numbers cited by Plaintiff in the Complaint. Without having the benefit of discovery, Plaintiff is limited to publicly available information of internal affairs investigation of City's police department.

For comparators, Plaintiff alleges that from 2013-2022, the City failed to find any use of excessive force on Black civilians and not one complaint resulted in officer discipline while deadly force against two white civilians, identified as Case Nos. 2013-0234 and 2019-0190, was ruled "Not Justified." They City finds excessive force against white citizens but not Black citizens. Through discovery, Plaintiff expects to find more comparators and more details on these two identified cases.

To survive a motion to dismiss or in this case judgment on the pleadings, a plaintiff need only plead facts to show that the claim has substantive plausibility. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 135 S.Ct. 346, 347, 190 L.Ed.2d 309 (2014). A complaint "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 1949; citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint which lays out events which state simply, concisely, and directly events that entitle a claimant to damages is "required to do no more to stave off threshold dismissal for want of an adequate statement of their claim." *Johnson* at 347.

The Equal Protection Clause provides that no state actor shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. At its essence, the Equal Protection Clause directs that all persons similarly situated should be treated alike. *Fisher v. King*, 232 F.3d 391, 399 (4th Cir. 2000). An equal protection violation based on race occurs when the government explicitly classifies people based on race or when the administration or enforcement of a law disproportionately affects one class of persons over another and discriminatory intent is shown. *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 388 (4th Cir. 2000).

Plaintiff has alleged that the City of Gastonia's internal investigative and disciplinary processes disproportionately affect Black citizens where excessive force complaints from white citizens result in officer discipline and complaints from Black citizens are dismissed. Plaintiff identifies two individual case numbers where a white citizen's complaint was investigated, and the officer's use of deadly force was ruled not justified. Plaintiff alleges that out of all complaints from Black civilians from 2013-2022, none were ruled not justified. Plaintiff alleges

a ten-year pattern of racially disparate outcomes in citizen complaints and deliberate inaction by final policymakers which resulted in unconstitutional uses of force against Black citizens including Mr. Lipscomb. Viewed in the light most favorable to Plaintiff, these allegations demonstrate both discriminatory effect and discriminatory intent. Plaintiff has set forth allegations to show that the force used against Mr. Lipscomb was the product of a deliberate process of law enforcement based on race. As such, the Equal Protection claim must be allowed to proceed.

**VII.     Plaintiff states a viable claim for punitive damages.**

To the extent Defendants argue that they are entitled to judgment on the pleadings as to all Plaintiff's claims for punitive damages, this should be denied. Plaintiff is entitled to seek punitive damages as an element of damages to the extent they are allowed by law. A municipality may be immune from punitive damages under 42 U.S.C. § 1983, but that does not negate the relief on other causes of action or from other Defendants.

**CONCLUSION**

As shown in the argument set forth herein, Plaintiff has set forth sufficient allegations in the pleadings to support the causes of action alleged. Defendants are not entitled to judgment on the pleadings. Plaintiff objects to the consideration of the video excerpts submitted by Defendants in support of their motion because the videos are edited excerpts, have not been authenticated, are not integral to Plaintiff's Complaint, and does not blatantly contradict Plaintiff's allegations. Plaintiff asks that the Motion for Judgment on the Pleadings be denied and that this matter be allowed to proceed to discovery.

Respectfully submitted,

s/ Micheal L. Littlejohn Jr.
Micheal L. Littlejohn Jr.
N.C. Bar No. 49353
Littlejohn Law PLLC
PO Box 16661
Charlotte, NC 28297
Telephone: (704) 322-4581
Fax: (704) 625-9396
Email: mll@littlejohn-law.com

Counsel for Plaintiff

**CERTIFICATION REGARDING USE OF ARTIFICIAL INTELLIGENCE**

Pursuant to the *Standing Order In re: Use of Artificial Intelligence*, No. 3:24-mc-104 (W.D.N.C. June 18, 2024)., the undersigned hereby certifies the following with respect to the accompanying filing:1) No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources West Law, Lexus, FastCase, and Bloomberg; 2) Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his direction as to the accuracy of the proposition for which it is offered in the citation to authority provided.

Respectfully submitted,


Date: October 1, 2025

s/ Micheal L. Littlejohn Jr.
Micheal L. Littlejohn Jr.
N.C. Bar No. 49353
Littlejohn Law PLLC
PO Box 16661
Charlotte, NC 28297
Telephone: (704) 322-4581
Fax: (704) 625-9396
Email: mll@littlejohn-law.com

Counsel for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**
No. 3:25-cv-00527

| | |
|---|---|
| Thelma Mackins, as the Administrator for the Estate of Jason B. Lipscomb | ) ) ) |
| PLAINTIFF, | ) ) ) ) ) ) |
| **v.** | ) ) ) |
| Officer JUAN PABLO SEPULVEDA CADAVID, Officer JASON LEE BEAVER, Officer HARRISON HAMORSKY, Officers JOHN and Jane Doe 1-2, City of Gastonia | ) ) ) ) ) |
| DEFENDANT(s) | ) |

---

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 1, 2025, the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** was electronically filed with the Clerk of the Court, using the Court's CM/ECF electronic service system, and notice thereof was served in accordance therewith via electronic mail, to counsel of record.

BY: /s/ Micheal L. Littlejohn Jr._____
Micheal L. Littlejohn, Jr.,
N.C. Bar 49353
Email: mll@littlejohn-law.com
*Attorney for Plaintiff*